UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x
                                         :
BRENDA P. DORÉ,                          :
                                         :
                Plaintiff,               :
                                         :        05 Civ. 2443 (BSJ)
        v.                               :        **Opinion and Order**
                                         :
JULIAN WORMLEY aka ALBERT WORMLEY,       :
ZADIKIM YISRAEL, ZECHARIAH BEN LEVY,     :
GEORGIA WHITE, CHUL HANANI aka           :        USDC SDNY
CHUL HENSCHEL aka HAROLD JONES,          :        DOCUMENT
                                         :        ELECTRONICALLY FILED
                Defendants.              :        DOC #: _____
-----------------------------------------x       DATE FILED: 2/8/10

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

        On February 28, 2005, Plaintiff Brenda P. Doré

("Plaintiff") filed this diversity action alleging claims

arising out of a dispute with Defendants Julian Wormley

("Defendant Wormley"), Zadikim Yisrael ("Defendant Yisrael"),

Zechariah Ben Levy, Georgia White, and Chul Hanani

("Defendants") over property and fixtures contained within an

edifice located at 1 West 123rd Street in New York City (the

"Building").[1]  On January 4, 2008, the Court dismissed the action

with leave to replead, finding that Plaintiff had not adequately

pled the requisite amount in controversy to sustain this Court's

------------------------------------------

[1]     Defendants state in their Motion, and Plaintiff has not disputed, that
        1 W. 123rd Street, New York, New York is identical to 31 Mt Morris Park
        West, New York, New York.  (See Defs.' Mot. Summ. J. 1.)  Accordingly,
        for the purposes of this Order, the "Building" refers to both of the
        subject addresses.

1

diversity jurisdiction.   On February 4, 2008, Plaintiff filed an

Amended Complaint.

Before the Court is Defendants' Motion for Summary Judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.

For the reasons set forth below, Defendants' Motion is GRANTED.

## BACKGROUND[2]

---

[2]     The facts stated here are drawn from Defendants' Local Rule 56.1
        statement, Plaintiff's Local Rule 56.1 statement, and the Amended
        Complaint. Under Local Civil Rule 56.1(c), "material facts set forth in
        the statement required to be served by the moving party will be deemed
        to be admitted for purposes of the motion unless specifically
        controverted."   See also Giannullo v. City of New York, 322 F.3d 139,
        140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a
        fact so set forth in the moving party's Rule 56.1 statement, that fact
        will be deemed admitted.").   Moreover, "[e]ach statement by the movant
        or opponent pursuant to Rule 56.1(a) and (b), including each statement
        controverting any statement of material fact, must be followed by
        citation to evidence which would be admissible, set forth as required
        by Federal Rule of Civil Procedure 56(e)."   Local Civil Rule 56.1(d).

        Defendants' Rule 56.1 statement cites as evidence the transcript from
        Plaintiff's November 6, 2008 deposition.   Plaintiff, however, states
        that she "objects to the use of the deposition transcript in that
        defendant failed to provide a copy of the transcript to plaintiff and
        plaintiff has not in whole or in part certified any of the statements
        made in the deposition to be accurate."   (Pl.'s Rule 56.1 Stmt. 1-2.)

        Federal Rule of Civil Procedure 30(e) provides that "[o]n request by
        the deponent or a party before the deposition is completed, the
        deponent must be allowed 30 days after being notified by the officer
        that the transcript or recording is available in which: (A) to review
        the transcript or recording; and (B) if there are changes in form or
        substance, to sign a statement listing the changes and the reasons for
        making them."   As other courts in this district have noted, though,
        "[t]he fact that Plaintiff did not sign the deposition transcript does
        not . . . make it inadmissible, as a deponent is required to sign the
        deposition transcript only if review of the transcript is requested
        before the deposition is completed and changes are made by the
        deponent."   Merring v. Town of Tuxedo, N.Y., No. 07 Civ. 10381, 2009 WL
        849752, at *1 (S.D.N.Y. Mar. 31, 2009) (internal quotations omitted).

        In the instant case, Plaintiff states that "at the conclusion of [her]
        deposition, [Defendants' counsel] informed [her] that the deposition
        was not completed and would schedule an additional two hours."   (Pl.'s

This case concerns the Commandment Keepers Ethiopian Hebrew Congregation Pillar and Ground of the Truth, Inc. ("Commandment Pillar"), a congregation founded in Harlem, New York City in

---

Aff. Opp'n Summ. J. ¶ 3.) The Court interprets this statement as asserting that Plaintiff was not aware at the conclusion of her deposition that the deposition was complete and thus that she did not have an opportunity to request a transcript of the deposition in order to review her testimony. However, Plaintiff's deposition was conducted on November 6, 2008. Plaintiff should have understood that the deposition had been deemed complete when Defendants did not contact her within several weeks of that date to schedule a second day of testimony. However, Plaintiff failed to request a copy of her deposition transcript at any time prior to Defendants' filing of their Motion for summary judgment on March 10, 2009. See Pacheco v. New York Presbyterian Hosp., 593 F. Supp. 2d 599, 605 n.1 (S.D.N.Y. 2009) ("The failure of a party to request a copy of his own deposition transcript precludes his right to make changes to his transcript.").

Moreover, after Defendants filed their Motion on March 10, 2009, Plaintiff did not immediately object to the use of her deposition transcript or request a copy of the transcript to review. On March 10, 2009, Plaintiff wrote a letter to the Court asking that Defendants remove personal identifiers from the publicly docketed transcript, but not even mentioning the question of reviewing or certifying the transcript itself. (See Pl. Letter Mar. 10, 2009.) Instead, Plaintiff waited another month, until filing her opposition papers on April 3, 2009, to object to the use of the deposition transcript in this case. Cf. Pacheco, 593 F. Supp. 2d at 605 n.1 (finding that a plaintiff could not contest the use of his deposition testimony when he had not "produced any sworn statement or document indicating he requested a copy of his deposition").

Even when stating her belated objection to the deposition transcript on April 3, 2009, Plaintiff did not submit an errata sheet or otherwise list changes to the original transcript. On the contrary, Plaintiff simply states that she does not "admit to the content" of any of her deposition testimony. (See, e.g., Pl.'s Rule 56.1 Stmt. ¶ 9.) Such conclusory statements cannot invalidate otherwise admissible record evidence. Cf. CSC Holdings, Inc. v. Alberto, 379 F. Supp. 2d 490, 493 n.1 (S.D.N.Y. 2005) (stating that "original deposition answers constitute the admissions of a party, and as such form part of the record evidence").

Plaintiff's objections to the use of her deposition transcript are belated, conclusory, and unconvincing. Accordingly, the Court disregards Plaintiff's attempt to disavow her deposition testimony and considers the transcript of Plaintiff's deposition testimony admissible evidence.

1921 by Chief Rabbi W.A. Matthew, "the first Chief Rabbi of African parentage in the United States." (Am. Compl. ¶ 3.) In 1962, Commandment Pillar purchased the Building for use as a synagogue. (Id. Ex. 4 ¶ 4.) Plaintiff is Chief Rabbi Matthew's granddaughter. (Id. ¶ 3.) According to Plaintiff, the Building is now a New York City Landmark. (Id. ¶ 21.)

Chief Rabbi Matthew died in 1973. (See Movants' Rule 56.1 Stmt. ¶ 5; Pl.'s Rule 56.1 Stmt. ¶ 5.) Shortly thereafter, a dispute arose between Plaintiff and Commandment Pillar, on the one hand, and a rival congregation associated with the Building, the Commandment Keepers Congregation, Inc. ("Commandment Keepers"). (Am. Compl. ¶¶ 4, 12.) Defendants are members of Commandment Keepers. (See id. ¶ 4.)

Plaintiff states that Defendants, as members of Commandment Keepers, began illegally occupying the Building sometime in the 1970s. (See Movants' Rule 56.1 Stmt. ¶ 7; Pl.'s Rule 56.1 Stmt. ¶ 7.[3]) Plaintiff further alleges that Defendants have excluded Plaintiff and other members of Commandment Pillar from the

---

[3] Plaintiff notes that Defendants, in their Rule 56.1 statement, frequently misidentify the deposition pages cited to support the relevant assertion. (See Pl.'s Rule 56.1 Stmt. ¶ 7.) The Court has reviewed the deposition transcript in detail, and has identified the pages on which the relevant testimony may be found. (See Pl. Dep. 80, 129-30, 158 (pages on which relevant testimony may be found).) Henceforth, where Defendants cite to the wrong page of the deposition transcript, the Court provides corrected pagination.

Building since that time, preventing Plaintiff from using the Building for religious purposes.  (See id.[4])  Plaintiff also claims that Defendants have damaged the building in the course of their occupation, and that "[m]any of the rooms in this landmark edifice have been damaged or vandalized during the time that defendants were locked in the building."  (Am. Compl. ¶ 24.)  Plaintiff states that Defendants have received grants from the Landmark Conservancy to repair the Building, but have failed to perform these repairs.  (Id. ¶ 30.)

Plaintiff claims that personal property belonging to Plaintiff remained in the Building after she was excluded from the Building in the 1970s.  (See Movants' Rule 56.1 Stmt. ¶ 8; Pl.'s Rule 56.1 Stmt. ¶ 8.[5])  According to Plaintiff, this property included, inter alia, family heirlooms, Torahs, furniture, documents, journals, televisions, and musical instruments.  (See id.)  Plaintiff claims that she has made multiple demands for the return of personal property allegedly within the Building, but that Defendants have refused to return the property in question.  (See Movants' Rule 56.1 Stmt. ¶ 11; Pl.'s Rule 56.1 Stmt. ¶ 11.)  Plaintiff further alleges that Defendants have damaged her personal property remaining within

---

[4]     (See Pl. Dep. 267-69 (pages on which relevant testimony may be found).)

[5]     (See Pl. Dep. 113, 116, 140-41, 146, 155, 167, 170-80, 201, 204 (pages on which relevant testimony may be found).)

the Building, including religious artifacts.  (See Am. Compl. ¶ 13.)

On May 17, 2006, Defendants moved in New York State Supreme Court for an injunction prohibiting the Plaintiff from entering into or coming within 500 feet of the Building.  (See Movants' Rule 56.1 Stmt. ¶ 22; Pl.'s Rule 56.1 Stmt. ¶ 22.)  On June 7, 2008, the State Supreme Court entered a Judgment (the "Judgment") granting the requested relief and stating that "[t]his permanent injunction may be specifically enforced by any law enforcement agency of the City and/or State of New York." (See Movants' Rule 56.1 Stmt. ¶¶ 22-23; Pl.'s Rule 56.1 Stmt. ¶¶ 22-23.)  In September 2006, Plaintiff was arrested for violating the June 7, 2008 Judgment and being within 500 feet of the Building.  (See Movants' Rule 56.1 Stmt. ¶ 26; Pl.'s Rule 56.1 Stmt. ¶ 26.)  On January 2, 2007, the Judgment was vacated and the injunction against Plaintiff lifted.  (Id.)

In September 2006, a petition (the "Petition") was filed in New York State Supreme Court on behalf of the Commandment Keepers Ethiopian Hebrew Congregation of the Living God, Pillar and Ground of Truth, Inc. requesting leave under Article 12 of the Religious Corporations Law and Article 511 of the Not-For-Profit Corporation Law to sell the Building to an entity known as 31 Mount Morris Park West LLC.  (See Movants' Rule 56.1 Stmt.

6

¶ 34; Pl.'s Rule 56.1 Stmt. ¶ 34; Am. Compl. ¶ 28.)  The State
Supreme Court granted the Petition in an Order and Amended Order
dated November 28, 2006 and April 12, 2007, respectively.  (See
Movants' Rule 56.1 Stmt. ¶ 34; Pl.'s Rule 56.1 Stmt. ¶ 34.)

On October 17, 2007, following the sale of the Building to
31 Mount Morris Park West LLC, Plaintiff's brother David Matthew
Doré ("Counsel Doré"), counsel to Plaintiff in the instant
action and a member of Commandment Pillar, moved in New York
State Supreme Court to vacate the Orders granting permission to
sell the Building.  (See Movants' Rule 56.1 Stmt. ¶ 35; Pl.'s
Rule 56.1 Stmt. ¶ 35.)  In March 2008, the State Supreme Court
vacated the Orders granting leave to sell the Building to 31
Mount Morris Park West LLC.  (See Movants' Rule 56.1 Stmt. ¶ 36;
Pl.'s Rule 56.1 Stmt. ¶ 36.)  Commandment Keepers have since
resubmitted the Petition for leave to sell the Building to 31
Mount Morris Park West LLC.  (See id.)  Counsel Doré has filed
objections to this Petition.  (See id.)  The Petition is
currently pending before the New York State Supreme Court.  (See
id.)

Plaintiff filed her original Complaint in this action on
February 28, 2005.  On January 18, 2007, Defendants filed a
motion to dismiss the Complaint, arguing that the parties were
not completely diverse and that Plaintiff had not satisfied the

7

amount in controversy requirement of 28 U.S.C. § 1332.  In an

Order dated January 4, 2008, this Court found that the non-

diverse defendants were dispensable parties, dismissed them, and

granted Plaintiff leave to file an amended complaint that

adequately addressed the amount in controversy.

On February 4, 2008, Plaintiff filed an Amended Complaint

in the instant action in the United States District Court for

the Southern District of New York alleging (1) that Defendants

have misrepresented themselves as officers of Commandment

Pillar; (2) that Defendants have wrongfully prevented Plaintiff

from entering the Building and using it for religious services;

(3) that Defendants have stalked and harassed Plaintiff and

members of Commandment Pillar; (4) that Defendants have damaged

and/or destroyed Plaintiff's personal property within the

Building; (5) that Defendants have prevented Plaintiff from

recovering personal property within the Building belonging to

Plaintiff; (6) that Defendants caused Plaintiff to be falsely

arrested; (7) that Defendants have libeled and slandered

Plaintiff; (8) that Defendants' attempt to sell the Building to

31 Mount Morris Park LLC was undertaken in violation of New York

Religious Corporations Law and the Not-For-Profit Corporation

Law; and (9) that Defendants have mismanaged real property once

held by Congregation Pillar and by Plaintiff, thereby causing

8

these properties to be lost.    Defendants now move for summary
judgment on all counts.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides
that a court shall grant a motion for summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).   "The party seeking
summary judgment bears the burden of establishing that no
genuine issue of material fact exists and that the undisputed
facts establish her right to judgment as a matter of law."
Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir.
1995).   The substantive law governing the case will identify
those facts that are material and "[o]nly disputes over facts
that might affect the outcome of the suit under the governing
law will properly preclude the entry of summary judgment."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact
exists, a court must resolve all ambiguities and draw all
reasonable inferences against the moving party.   Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587
(1986).   "If, as to the issue on which summary judgment is

9

sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). However, Plaintiff may not "rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that [her] version of the events is not wholly fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999).[6]

## DISCUSSION

### I.   Plaintiff's Claims Regarding Ownership or Use Rights to Real and Personal Property

### A.   Plaintiff's Claims Relating to Personal Property Allegedly Converted or Destroyed Are Time-Barred

Plaintiff alleges that Defendants have converted or destroyed personal property belonging to Plaintiff and located within the Building, and demands damages for these alleged acts. Plaintiff further demands that Defendants return personal property allegedly belonging to Plaintiff that remains within the Building.

---

[6]   The Court notes that Plaintiff was proceeding pro se when she filed the Amended Complaint. Based on this initial status, the Court construes her papers liberally and "interpret[s] them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (internal citation omitted). Counsel Doré assisted in the drafting of the Amended Complaint and later entered a notice of appearance on Plaintiff's behalf. (See Am. Compl. ¶ 12.) Nevertheless, the Court has liberally construed all of Plaintiff's submissions in accordance with her original pro se status.

10

Defendants, in turn, argue that Plaintiff's demand for

damages for the alleged conversion and destruction of personal

property, as well as her demand for the return of personal

property, are time-barred. (See Defs.' Mot. Summ. J. 14, 15.)

The Court agrees.

Under New York law, allegations of the "unauthorized

assumption and exercise of the right of ownership over goods

belonging to another to the exclusion of the owner's rights"

sound in conversion. Vigilant Ins. Co. of Am. v. Housing Auth.

of City of El Paso, Tex., 660 N.E.2d 1121, 1126 (N.Y. 1995). To

establish a cause of action in conversion, "the plaintiff must

show legal ownership or an immediate superior right of

possession to a specific identifiable thing and must show that

the defendant exercised an unauthorized dominion over the thing

in question to the exclusion of the plaintiff's rights.

Tangible personal property or specific money must be involved."

Bastidis v. Bastidis, 778 N.Y.S.2d 913, 913 (N.Y. App. Div.

2004). Both actions for conversion and actions for damages for

the taking of a chattel are governed by the three-year

limitation period of N.Y. C.P.L.R. § 214, and "accrual runs from

the date the conversion takes place and not from discovery or

the exercise of diligence to discover." Vigilant Ins., 660

N.E.2d at 1126; see N.Y. C.P.L.R. § 214; see also Fouad v.

11

Citibank, N.A., 553 N.Y.S.2d 577, 579 (N.Y. Sup. Ct. 1989)
("[T]he three-year statute of limitations applies to the
wrongful taking, withholding, or improper assertion of ownership
and control of personal property.").

The law of replevin governs actions for the recovery of
stolen or wrongfully detained property. A cause of action in
replevin "must establish that the defendant is in possession of
certain property of which the plaintiff claims to have a
superior right." Bastidis, 778 N.Y.S.2d at 913. "Demand upon,
and refusal of, the person in possession of the chattel to
return it [are] essential elements of a cause of action in
replevin." In re Peters, 821 N.Y.S.2d 61, 65 (N.Y. App. Div.
2006).

Actions in replevin are governed by a three-year statute of
limitations. See Matter of Lamb, 536 N.Y.S.2d 613, 613 (N.Y.
App. Div. 1988); see also McGough v. Leslie, 884 N.Y.S.2d 756,
757 (N.Y. App. Div. 2009). "As against a thief, a cause of
action for replevin accrues, and the limitations period
therefore begins to run, immediately upon the occurrence of the
theft, and this is so even if the owner does not know that a
theft has occurred." Solomon R. Guggenheim Found. v. Lubell,
550 N.Y.S.2d 618, 620 (N.Y. App. Div. 1990).

12

In the instant case, Defendants have introduced a copy of
sworn testimony in which Plaintiff stated that she first
attempted to recover the personal property that allegedly
remains in the Building "[s]omewhere shortly after they started
locking members out"; i.e., "somewhere around the '70s." (Pl.
Dep. 132, 131.) As Defendants note, Plaintiff reiterated these
dates throughout her deposition, convincingly establishing that
the personal items allegedly belonging to Plaintiff and in the
custody of Defendants has been locked inside the Building since
the late 1970s and thus that her claims for conversion and
replevin are time-barred. (See Defs.' Mot. Summ. J. 15; see,
e.g., Pl. Dep. 147 (stating that Plaintiff first tried to
recover the tables allegedly belonging to her and within the
Building "shortly before the lockout began" in the late 1970s";
id. (testifying that Plaintiff first tried to recover a trunk
allegedly held by Defendants "[a]round 1980"); id. 201 (stating
that glasses, gold plates, Chinaware, and cabinets allegedly
belonging to Plaintiff were left in the Building in or about
1976); id. 155-56 (stating that Plaintiff first made an attempt
to recover televisions allegedly belonging to Plaintiff and
allegedly located within the Building sometime prior to 1980).)

Plaintiff has stated that documents and other items
allegedly belonging to her were stolen from the Building

13

"[a]round the time [the Building] was ransacked and everything was stolen around 2007." (Pl. Dep. 70.) However, according to Plaintiff's own testimony, all items inside the Building—including these documents—have been inaccessible to Plaintiff since the late 1970s, when Plaintiff was first locked out of the Building. (See id. 132.) As discussed supra, the statute of limitations for conversion and replevin actions is three years. Plaintiff sued for the return of personal property and for damages for the destruction or conversion of personal property in 2005—more than twenty years too late even assuming that Plaintiff was separated from her property at the latest date that she provides; i.e., sometime around 1980. Therefore, even if the Building was ransacked in 2007, and property formerly belonging to Plaintiff stolen, the statute of limitations for Plaintiff to claim this property or to demand damages for its destruction was long over by that time.

Accordingly, Plaintiff's causes of action in conversion and replevin are time-barred, and must be DISMISSED.

B.   Plaintiff's Claims Regarding Real Property Allegedly

Wrongfully Seized Are Time-Barred

Plaintiff also alleges that Defendants have wrongfully interfered with her ownership of the Building, an action sounding in real property law. Defendants argue that this cause

14

of action is also time-barred under New York State law.    The
Court agrees.

An action for the return of real property is governed by a
ten-year statute of limitations.  See, e.g., Deering v. 860
Fifth Ave. Corp., 634 N.Y.S.2d 674, 675 (N.Y. App. Div. 1995)
("[A]n action to recover real property or its possession cannot
be commenced unless the plaintiff, or his predecessor in
interest, was seized or possessed of the premises within ten
years before the commencement of the action."); see also N.Y.
C.P.L.R. § 212(a).  "A person claiming title to real property,
but not in possession thereof, must act affirmatively and within
the time provided by statute."  Downes v. Peluso, 495 N.Y.S.2d
691, 692 (N.Y. App. Div. 1985).

In the instant case, Plaintiff has stated in sworn
testimony that "[s]omewhere in the '70s area" Defendants began
"[r]efusing entry [to the Building], locking the doors."   (Pl.
Dep. 158-59; see also Pl. Dep. 130-31 ("Mr. White started
putting locks on the door somewhere along the '70s route.").   To
the extent that Plaintiff seeks to recover the Building itself,
such an action must be brought within ten years of the alleged
seizure.  See N.Y. C.P.L.R. C.P.L.R. 212(a).  This action,
brought in 2005, is clearly beyond the statute of limitations.

15

Accordingly, Plaintiff's cause of action for the recovery of the Building itself must be DISMISSED.[7]

C.    Plaintiff's Claims Regarding Her Alleged Right to Use the Building For the Purpose of Worship Fail Due to the Revocation

of Any License She Might Once Have Had

Under New York law, "a license is the authority to do a particular act or series of acts upon another's land, which would amount to a trespass without such permission." Ark Bryant Park Corp. v. Bryant Park Restoration Corp., 730 N.Y.S.2d 48, 54 (N.Y. App. Div. 2001) (internal quotations omitted). "A license . . . grants the licensee a revocable non-assignable privilege . . . without granting possession of any interest therein." Roman Catholic Church of Our Lady of Sorrows v. Prince Realty Mgmt., LLC, 850 N.Y.S.2d 569, 570 (N.Y. App. Div. 2008). Because a license does not grant an interest in realty, it is "cancelable at will, and without cause." See Am. Jewish Theatre, Inc. v. Roundabout Theatre Co., Inc., 610 N.Y.S.2d 256, 257 (N.Y. App. Div. 1992); Simmons v. Abbondandolo, 585 N.Y.S.2d 535, 536 (N.Y. App. Div. 1992).

---

[7]    Because, according to Plaintiff's own testimony, she has not been in possession of the Building since the 1970s, Plaintiff is not the rightful owner of the Building and lacks standing to sue for any alleged damage or changes to Building fixtures. Accordingly, to the extent that Plaintiff intended to bring claims for the alleged destruction of "historical windows" (Am. Compl. ¶ 23,) vandalism to the Building directory (Am. Compl. ¶ 14,) intimidating notices placed on the Building, or the breaking of locks affixed to Building doors (id. ¶ 13,) these claims are also DISMISSED for lack of standing.

16

To the extent that Plaintiff intends to claim that she has a license to use the Building for the specific purpose of worship and that Defendants have blocked this use, (see Am. Compl. ¶ 10 (alleging that Defendants have "harass[ed], intimidate[d] and illegally lock[ed] out plaintiff pro se and other original congregation members preventing access to the temple for religious and other relevant purposes"),) this license must be considered revoked. When Plaintiff was first locked out of the Building in or around 1976, she was on notice that any license she might once have had to use the Building had been cancelled. Cf. Faith United Christian Church, Inc. v. United Christian Church, Inc., 698 N.Y.S.2d 874, 874 (N.Y. App. Div. 1999) ("Although a license may become irrevocable where the licensee has altered its position in reliance upon the license, there is no evidence in this case that Faith changed its position with respect to the premises, or expended any moneys in excess of ordinary maintenance and repairs, which it was required to pay in lieu of rent. Contrary to Faith's claim, United's decision to sell the premises was not a breach of any duty owed to the Faith congregation. The governing body of a religious corporation has the authority to discontinue work at a church, even in disregard of the wishes of the congregation.").

17

## II. Plaintiff's Claims of Misrepresentation and Misuse of

### Landmarks Conservancy Funds Fail for Lack of Standing

In Warth v. Seldin, the Supreme Court noted that "even when the plaintiff has alleged injury sufficient to meet the case or controversy' requirement, . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." 422 U.S. 490, 499 (1975); see also Farrell v. Burke, 449 F.3d 470, 494 (2d Cir. 2006) ("Federal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties."). In the corporate context, it is axiomatic that "[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." Jones v. Niagara Frontier Transp. Auth. (NFTA), 836 F.2d 731, 736 (2d Cir. 1987); see also id. (upholding the district court decision that plaintiff "did not have standing as an individual because the claims asserted all involved injuries to the Corporation").

In the instant case, Plaintiff alleges that the Defendants "have engaged in misrepresentation, falsely claiming to be officers of Commandment Pillar." (Am. Compl. ¶ 9.) Plaintiff claims that Defendants "have not been duly elected to said positions but have given themselves titles and false authority."

18

(Id.) As relief, Plaintiff demands "[a]n order preventing the
defendants from holding themselves out as officers or agents of
Commandment Keeper Ethiopian Hebrew Congregation of the Living
God Pillar and Ground of Truth, Inc." (Id. ¶ 38(d).)

Plaintiff also alleges that Defendants "have received
grants from the Landmark Conservancy to repair the building and
have failed to do so." (Am. Compl. ¶ 30.) As relief, Plaintiff
demands "an order for an accounting of any monies had and/or
received from the Landmarks Conservancy or any governmental
agency and the name of the defendant or party that funds were
disbursed to." (Id. ¶ 38(g).)

Defendants, in turn, argue that "[t]o the extent that
Plaintiff seeks from this Court a determination as to the true
Board of Trustee or leadership of the Commandment Keepers, this
action would not be cognizable because Plaintiff . . . is suing
here in her personal capacity and not on behalf of the
Commandment Keepers." (Defs.' Mot. Summ. J. 14.) More
generally, Defendants argue that "Plaintiff's allegations that
are related to the Commandment Keepers . . . should be dismissed
because Plaintiff is not suing on behalf of the Commandment
Keepers." (Id. 17.) The Court agrees.

Defendants have introduced evidence indicating that
Plaintiff brings this action in her personal capacity and not on

behalf of Commandment Pillar or in her capacity as an alleged member of the executive board of Commandment Pillar. (See Pl. Dep. 281-82.) Indeed, Plaintiff concedes this point, stating in her Opposition to Defendants' Motion that "Plaintiff is maintaining this action in her individual capacity." (Pl.'s Mem. Opp'n Summ. J. 2.) However, as Defendants point out, the misrepresentation and misuse of funds injuries alleged in the Complaint and elaborated upon in Plaintiff's Affirmation in Opposition to Defendants' Motion are injuries to Commandment Pillar rather than to Plaintiff as an individual, and thus Plaintiff—suing in her individual capacity—lacks standing to bring these claims. (See Defs.' Mot. Summ. J. 14, 16.)

Ultimately, Plaintiff has been unable to produce any evidence indicating a genuine issue of fact as to whether she has standing to bring a claim on behalf of Commandment Pillar, or even as to whether she is a member of the executive board of Commandment Pillar.[8] Defendants have introduced into evidence a copy of Plaintiff's response to Defendants' document request, in

---

[8]    Even in responding to Defendants' motion for summary judgment, Plaintiff continues to press her argument on behalf of a third party, claiming that "defendants lied to courts and government agencies [about] being officers of a valid religious corporation, Commandment Pillar." (Pl.'s Aff. Opp'n Summ. J. ¶ 7; see also id. ¶ 13 ("The defendants falsely claimed to be officers of the Commandment Keepers Ethiopian Hebrew Congregation the Pillar and Ground of the Truth, Inc. but masqueraded under the name of a fictitious religious corporation Commandment Keepers, the corporation they established for their deceptive plans.").)

20

which Defendants ask that Plaintiff produce "[c]opies of any
documents establishing or showing the 'lawful Executive Board'"
as referred to in the Amended Complaint. (Preston Decl. Ex. 5
("Doc. Req.") 4.) In her response, Plaintiff stated that she
"object[ed] to this Request on the grounds that a direction to
produce all documents establishing the "lawful Executive Board"
does not describe with reasonable particularity the items or
categories of documents requested. There are no documents that
respond to this request." (Id.) The Court finds this response
inadequate given that Plaintiff appears to assert her membership
in an alleged "lawful Executive Board" as grounds for her
standing to contest the disposition of congregation funds and
the identity of congregation officials. Ultimately, although
Plaintiff may feel personally aggrieved by Defendants' alleged
misuse of Commandment Pillar's name, and though she may have
faced losses as a result, the underlying legal right and
interest is that of a third party.

Accordingly, even assuming that the alleged
misrepresentations and misuses of funds took place, and that
Defendants had the nefarious intent that Plaintiff alleges,
Plaintiff does not have standing to contest these injuries to

21

Commandment Pillar and her cause of action for misrepresentation

and misuse of Landmarks Conservancy funds must be DISMISSED.[9]

## III. Plaintiff's Cause of Action for False Arrest and/or

## Malicious Prosecution Fails Because There Was Probable Cause for

## the Arrest[10]

As the New York Court of Appeals observed in Broughton v.

State, "[t]he tort of malicious prosecution protects the

personal interest of freedom from unjustifiable litigation.  The

essence of malicious prosecution is the perversion of proper

legal procedures."  335 N.E.2d 310, 314 (N.Y. 1975).  "Under New

York law, a claim for malicious prosecution requires (1)

initiation of litigation with malice, i.e. 'a purpose other than

the adjudication of a claim,' (2) 'an entire lack of probable

cause in the prior proceeding,' (3) special damages going beyond

---

[9]  In the Amended Complaint, Plaintiff also appears to bring a claim for
false arrest on behalf of Natan Lenjo as well as claims for stalking,
harassment, and intimidation on behalf of "other original congregation
members."  (See Am. Compl. ¶¶ 10,11,20.) Defendants argue in their
Motion that Natan Lenjo is not a party to this action and thus that any
claims brought on his behalf must be dismissed, and the Court agrees.
(See Defs.' Mot. Summ. J. 15.)  Plaintiff has stated in sworn testimony
that she is suing in her personal capacity and not on behalf of any
organization or other individual.  (See Pl. Dep. 281-82.)  Accordingly,
any claims brought on behalf of any other individual, including Natan
Lenjo, must be DISMISSED.

[10] It is unclear whether Plaintiff's claim is for false arrest or for
malicious prosecution.  However, in either event, her claim fails
because there was probable cause for her arrest.  The existence of
probable cause is a complete defense to claims for both false arrest
and malicious prosecution.  See Singer v. Fulton County Sheriff, 63
F.3d 110, 118 (2d Cir. 1995) (false arrest); Russell v. Smith, 68 F.3d
33, 36 (2d Cir. 1995) (malicious prosecution).

22

the 'demands of defending a lawsuit' to encompass 'a grievance
akin to the effect of a provisional remedy,' and (4) entry of
judgment against the malicious plaintiff in the prior lawsuit."
Intershoe, Inc. v. Filanto S.P.A., 97 F. Supp. 2d 471, 476
(S.D.N.Y. 2000) (citing Engel v. CBS, Inc., 711 N.E.2d 626, 631-
32 (N.Y. 1999)).  Ordinarily, a malicious prosecution "involves
an interference with the claimant's person or property by resort
to a provisional remedy such as attachment, arrest or
injunction."  Miss Universe, Inc. v. Patricelli, 753 F.2d 235,
238-39 (2d Cir. 1985).

      In the instant case, Plaintiff alleges that "in September
2006, [D]efendant [Yisrael] lied to police that plaintiff was in
violation of a civil judgment . . . .  [and that] [t]his lie
resulted in the false arrest of plaintiff in her residence at
night at 11:00 pm without a warrant."  (Am. Compl. ¶ 34.)
Plaintiff states that "[b]ased solely on a civil judgment in
which plaintiff was not a party, Plaintiff was held locked up in
the 28th precinct for several hours and then held overnight in
the New York City criminal court central booking section."
(Id.) Plaintiff further states that "[t]he civil judgment was
vacated and dismissed."  (Id.)

      Defendants have responded to this claim, arguing that
"Plaintiff's cause of action for false arrest should be

                              23

dismissed because Plaintiff cannot establish that her arrest occurred without probable cause." (Defs.' Mot. Summ. J. 17.) The Court agrees.

In moving for summary judgment on this claim, Defendants have provided a copy of the Judgment issued by the New York State Supreme Court on June 7, 2006 prohibiting Plaintiff from entering into or coming within 500 feet of the Building. (See Preston Decl. Ex. C.) This Judgment was specifically enforceable by any law enforcement agency of the State or City of New York. (See id.) While the Judgment was subsequently vacated on January 2, 2007, it was still in force at the time of Plaintiff's arrest in September 2006. (See Am. Compl. Ex. H (vacating Judgment); see also Pl. Dep. 233-35 (discussing vacatur).)

In her opposition to Defendants' Motion for summary judgment, Plaintiff admits that the Judgment was in place at the time of her arrest. (See Pl. Dep. 235.) However, Plaintiff claims that the Judgment was "[b]ased on lies." (Id.) Plaintiff claims that "[Defendant Yisrael] knew and her counsel David Scudieri knew that the civil judgment was unlawful and yet they persisted in using the judgment to facilitate the arrest." (Pl.'s Aff. Opp'n Summ. J. ¶ 10.) Plaintiff further states that "[t]he acts of the defendants were particularly devious because

24

they engaged the police in their crusade of deceit. . . .  The police referred to the judgment as authority for their actions." (Id. ¶ 12; see also id. ¶ 15 ("[D]efendant [Yisrael] illegally used the judgment to coerce the police to effectuate the false arrest.").)

While Plaintiff contests the validity of the Judgment, though, she does not refute Defendants' contention that she violated the Judgment by coming within 500 feet of the Building:

> Q.  'Would [you] agree that in September 2006 you were arrested for violating the provisions of [the Judgment]?'
> A.  'That was the charge.'
> Q.  'You were arrested because you were within 500 feet of the [Building]?'
> A.  'That's what the charge was.'
> Q.  'Were you in fact within 500 feet of the [Building] in September of 2006?'
> A.  'I don't recall where I was. . . .'
> Q.  'At any time in September of 2006 were you within 500 feet of the [Building]?'
> A.  'I can't recall.' . . . .
> Q.  'At any time after entry of [the Judgment], were you on the same block of the [Building]?'
> A.  'I don't know.'

(Pl. Dep. 230, 231.[11])

---

[11]   The Court notes that Plaintiff has consistently maintained that she was in her home at the time of her arrest, rather than in the vicinity of the Building.  (See, e.g., Am. Compl. ¶ 34.)  However, the exact location of Plaintiff's arrest is irrelevant.  Defendants have introduced evidence indicating that Plaintiff was arrested because she violated the Judgment at some point prior to her arrest by coming within 500 feet of the Building, and Plaintiff has failed to refute this showing of probable cause by present[ing] "specific facts showing [that] there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

Plaintiff cannot defeat Defendants' Motion for summary judgment with conclusory arguments about the foundation of the Judgment.  See, e.g., Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory, or based on speculation." (internal quotations omitted)).  As the New York Court of Appeals has repeatedly stressed, "malicious prosecution claims are not encouraged, and thus, without a clear and satisfactory showing that plaintiffs in the previous action lacked reasonable grounds, the case would be dismissed."  Engel, 711 N.E.2d at 629.  It is evident that if Plaintiff came within 500 feet of the Building during the time that the Judgment was valid, Defendants had probable cause to call upon law enforcement to enforce the Judgment.  Cf. Fortunato v. City of New York, 882 N.Y.S.2d 195, 196 (N.Y. App. Div. 2009) ("Probable cause to believe that a person committed a crime is a complete defense to claims of false arrest and malicious prosecution.").  As Plaintiff has failed to refute Defendants' contention that she violated the Judgment by coming within 500 feet of the Building during the time that the Judgment was in force, this Court

cannot find that Defendants lacked probable cause in initiating proceedings against her.

Because Plaintiff cannot show that there was no probable cause for her arrest, her action for malicious prosecution and/for for false arrest must be DISMISSED.

## IV.  Plaintiff's Claims of Harassment, Libel, Slander, and Fraudulence Conveyance of Real Property Are Dismissed as Conclusory and Unsupported by Evidence in the Record

Plaintiff alleges in the Amended Complaint that Defendants have "harass[ed] [and] intimidate[d] . . . plaintiff pro se" (Am. Compl. ¶ 9,) "engaged in verbal and physical harassment even to the extent of stalking the plaintiff pro se" (id. ¶ 11,) and "engaged in a pattern and practice of slander and libel against the good name and reputation of plaintiff (id. ¶ 37.) Plaintiff further claims that Defendants' alleged "behavior has resulted in the loss of all of the numerous and valuable properties once held by the congregation and plaintiff pro se in West Babylon, Long Island" and that Defendants "mismanaged said properties and all were lost due to non-payment of taxes and fraudulent conveyances."  (Id. ¶ 36.)

Defendants, in turn, argue that these allegations are conclusory and unsupported by any admissible evidence. Defendants argue that "Plaintiff does not specify what defendant

specifically engaged in the acts" of harassment and intimidation. (Defs.' Mot. Summ. J. 14.) Defendants further argue that "[r]egarding Plaintiff's claim for damage to her personal property, . . . Plaintiff has not produced sufficient evidence in the record regarding the specific property she seeks damages for; or her ownership or the property's value." (Id. 18.) Defendants contend that "[r]egarding Plaintiff's claim of libel and slander, summary judgment should be granted because Plaintiff has provided no specifics regarding the libel or slander that Plaintiff alleges that Defendants have engaged in." (Id.) The Court agrees.

The Second Circuit has indicated that summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994).

In the instant case, Plaintiff—despite the advantages of a full period of discovery—has completely failed to adduce any evidence from which a rational jury could find in her favor. In response to Defendants' contention that her harassment claim is

28

vague and conclusory, Plaintiff offers the unsworn statement
that "[Defendant Yisrael], while aided and abetted by defendant
Wormley even engaged in stalking the [Plaintiff], following her
across the street from the temple and placing a video camera in
her face." (Pl.'s Mem. Opp'n Summ. J. 3.) Even accepting these
assertions as part of Plaintiff's case, New York law "does not
recognize any independent tort for harassment," and the conduct
complained of does not appear to give rise to any other
cognizable cause of action or basis for tort liability. N.Y.
Stock Exch., Inc. v. Gahary, 196 F. Supp. 2d 401, 414 (S.D.N.Y.
2002); see also Edelstein v. Farber, 811 N.Y.S.2d 358, 358 (N.Y.
App. Div. 2006) ("New York does not recognize a common-law cause
of action for harassment.").

Likewise, when requested to produce "[c]opies of any
documents related to slander and libel of the Plaintiff referred
to in the complaint," Plaintiff replied:  "To the extent that
such documents exist they are in the possession of the
defendants who unlawfully removed all documents from the
[Building]." (Doc. Req. 2.) However, Plaintiff served no
discovery requests on Defendants, and thus lost her opportunity
to acquire these alleged documents and thus to present concrete
evidence to the Court. Accordingly, the Court has nothing but
Plaintiff's bare assertions of unspecified "slander and libel"

as evidence that Defendants are guilty of these torts.  See, e.g., Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991) (finding that "bald assertion[s], completely unsupported by evidence, did not satisfy [non-moving party's] burden" on summary judgment).

Plaintiff's assertion of properties lost in Long Island is even more vague and unsubstantiated.  When Defendants requested that Plaintiff produce "[c]opes of all documents showing, listing, or evidencing how [Plaintiff] came to own the property that is the subject matter of Plaintiff's suit herein," Plaintiff replied:  "Plaintiff objects to this Request on the ground that a direction to produce all documents showing, listing, or evidencing how [Plaintiff] came to own subject property is overly vague."  (Doc. Req. 2.)  Due to this response, the Court has no evidence other than Plaintiff's unsubstantiated allegations that she ever possessed unnamed, undescribed properties on Long Island, or even that these properties ever existed.  Cf. Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) (noting that "mere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist" (internal quotation omitted)).

Because Plaintiff has utterly failed to demonstrate any
material issues of fact with respect to her claims of
harassment, libel, slander, and fraudulence conveyance of real
property, these claims must be DISMISSED.

V.   Plaintiff's Claim of Property Sales in Alleged Violation of
the Religious Corporations Law and the Not-For-Profit
Corporation Law is Dismissed as Directly Duplicative of a
Pending Action in New York State Court

Plaintiff alleges that Defendants violated Article 12 of
the Religious Corporations Law and Article 511 of the Not-For-
Profit Laws in carrying out the sale of the Building to 31 Mount
Morris Park West LLC.  (Am. Compl. ¶ 29.)  Plaintiff claims that
"[w]ithout any knowledge or consent by the plaintiff pro se or
Commandment Pillar members defendants submitted petitions to the
[New York State Supreme] Court with their sworn statements that
there were no other members of Commandment or Commandment Pillar
and in fact did convince the Court and the New York State
Attorney General to approve the sale."  (Id.)  Plaintiff alleges
that following this approval of sale, "defendants fraudulently
and without authority . . . sold the [Building] to a Colleen
Taylor and an entity co-owned by Colleen Taylor[;] namely: 31
Mount Morris Park LLC."  (Id. ¶ 28.)  According to Plaintiff,
this sale of the Building was "dastardly and unauthorized."

31

(Id.)  As relief, Plaintiff requests "an order rescinding the
sale of the congregation property or properties."  (Id. ¶
38(e).)

     Defendants, in turn, argue that "summary judgment should .
. . be granted because this [is] the subject of the same action
before the New York State Supreme Court."  (Defs.' Mot. Summ. J.
16.)  The Court agrees.

     The Supreme Court has repeatedly noted that, in certain
situations, "[d]eclining jurisdiction in light of parallel or
duplicative state court proceedings is in the interests of wise
judicial administration, giving regard to conservation of
judicial resources and comprehensive disposition of litigation."
Colorado River Water Conservation Dist. v. United States, 424
U.S. 800, 817 (1976) (internal quotations omitted).  "To
determine whether abstention under Colorado River is
appropriate, a district court is required to weigh six factors,
with the balance heavily weighted in favor of the exercise of
jurisdiction."  Village of Westfield v. Welch's, 170 F.3d 116,
121 (2d Cir. 1999) (citing Moses H. Cone Mem'l Hosp. v. Mercury
Constr. Corp., 460 U.S. 1, 16 (1983)).  These factors are:  (1)
jurisdiction over a res or property; (2) inconvenience of the
federal forum; (3) avoidance of piecemeal litigation; (4) the
order in which jurisdiction was obtained; (5) whether state or

federal law applies; and (6) whether the state forum will
adequately protect the rights of the party seeking to invoke
federal jurisdiction.  Id.

        Of these considerations, "[n]o single factor is necessarily
decisive, . . . and the weight to be given to any one factor may
vary greatly from case to case, depending on the particular
setting of the case."  Id.  Additionally, a "necessary
prerequisite to abstention under Colorado River" is "a finding
that the concurrent proceedings are 'parallel.'"  Dittmer v.
Cty. of Suffolk, 146 F.3d 113, 117-18 (2d Cir. 1998). "Suits are
parallel when substantially the same parties are
contemporaneously litigating substantially the same issue in
another forum."  Id. (internal quotation omitted).

        In this case, jurisdiction over property is not an issue.
Thus, for purposes of the Colorado River analysis, the first
factor weighs slightly against abstention.  The second factor,
inconvenience of a federal forum, is also a non-issue, since a
federal forum is just as convenient as a state forum for all
parties in this case.  Accordingly, the second factor also
weighs against abstention.

        The third factor, avoidance of piecemeal litigation, falls
strongly in favor of abstention.  Given the Supreme Court's
acknowledgement that "the most important factor in our decision

33

to approve the dismissal [in Colorado River] was the 'clear federal policy . . . [of] avoidance of piecemeal litigation,'" the Court is justified in giving this factor significant weight. Moses H. Cone Mem'l Hosp., 460 U.S. at 16 (quoting Colorado River, 424 U.S. at 819). Plaintiff's claims against Defendants with respect to their allegedly unauthorized sale of the Building involve the same fundamental claims as the pendant action filed by Counsel Doré—Plaintiff's brother and counsel in the instant case—in New York State Supreme Court. (See Am. Compl. Ex. F (order to show cause why Orders permitting sale of the Building should not be vacated ("Order to Show Cause"); Affirmation of David M. Doré).)

The Court acknowledges that the New York State Supreme Court action was brought on behalf of the Commandment Keepers Ethiopian Hebrew Congregation of the Living God, Pillar and Ground of Truth, Inc., whereas this action is brought by Plaintiff as an individual. Moreover, the named Defendants in the two actions differ, with the exception of Defendant Wormley. Nonetheless, the two actions arise out of and depend on exactly the same facts, and both request the same relief: namely, an order rescinding the sale of the congregation property to 31 Mount Morris Park West LLC. Plaintiff participated in the state action by submitting an affirmation in support of vacatur (see,

e.g., Order to Show Cause 1,) and the motion was submitted by
the same counsel representing Plaintiff in this action; i.e.,
Plaintiff's brother.  Accordingly, it is fair to characterize
the two actions as parallel and "piecemeal litigation."

The Second Circuit has noted that "[m]aintaining virtually
identical suits in two forums . . . would waste judicial
resources and invite duplicative effort."  Akwright-Boston Mfrs.
Mut. Ins. Co. v. City of New York, 762 F.2d 205, 211 (1985); see
also Goldentree Asset Mgmt., L.P. v. Longaberger Co., 448 F.
Supp. 2d 589, 594 (S.D.N.Y. 2006).  To allow this action
relating to the sale of the Building to 31 Mount Morris Park
West LLC would frustrate the policy considerations so plainly
set forth by the Supreme Court and the Second Circuit.  The
Court will, therefore, consider this factor as weighing heavily
in favor of abstention.

The fourth factor, order in which jurisdiction was
obtained, also favors abstention.  When assessing this factor,
"priority should not be measured exclusively by which complaint
was filed first, but rather in terms of how much progress has
been made in the two actions."  Moses H. Cone Mem'l Hosp., 460
U.S. at 21.  Counsel Doré filed the state action on June 4,
2007, approximately six months before he assisted Plaintiff with
the filing of the Amended Complaint.  (See Am. Compl. 12.)  In

35

the years since, moreover, much more progress has been made in
the state action with respect to issues relating to the sale of
the Building:  namely, the vacatur of the original Orders
granting permission to sell the Building, the filing of a new
Petition for leave to sell the Building, and the filing of
objections by Counsel Doré.  By comparison, the sale of the
Building is essentially a tangential issue in the instant
action, and this Court has heretofore played no role in deciding
the Building's fate.  The Court therefore finds that this factor
weighs in favor of abstention.

        The fifth factor, whether state or federal law supplies the
rule of decision, weighs in favor of abstention.  Cf. Moses H.
Cone Mem'l Hosp., 460 U.S. at 25 (noting that "[a]s all
diversity suits raise issues of state law, their presence does
not weigh heavily in favor of surrender of jurisdiction").
Here, there are only issues of state law, specifically the
Religious Corporations Law and the Not-For-Profit Corporation
Law.  No federal question is implicated.  Thus, this factor
slightly favors abstention.  See Wiggin & Co. v. Ampton Invs.,
Inc., 66 F. Supp. 2d 549, 554 (S.D.N.Y. 1999) (holding that "the
absence of a federal question still slightly favors
abstention.").

The sixth factor is the adequacy of procedures in state court to protect the plaintiff's rights.  In assessing the adequacy of the state court forum, a federal court must determine whether the "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."  Moses H. Cone Meml Hosp., 460 U.S. at 28.

Here, Plaintiff does not assert any reason why the New York State Supreme Court would be inadequate to protect her rights.  In fact, Plaintiff has implicitly demonstrated her belief in the adequacy of the New York court to protect her rights by participating in the filing of a motion that, though more detailed, bears a strong resemblance to her complaint in this action with regard to the Building sale.  See Wiggin, 66 F. Supp. 2d at 554 ("Plaintiff's rights are adequately protected where it can assert . . . the same claims raised here.").  Thus, there is no reason to conclude that the New York court cannot adequately protect Plaintiff's rights, and therefore, this factor weighs in favor of abstention.

Ultimately, the balance of Colorado River factors weighs heavily in favor of abstention with regard to this issue.  Factors three, four, five, and six weigh in favor of abstention, while factors one and two weigh slightly against abstention.

Overall, the balance of factors, especially the weight of the avoidance of piecemeal litigation factor, qualifies this case as an exceptional one in which abstention is warranted.

Because the balance of Colorado River factors weighs heavily in favor of abstention with regard to the issue of the sale of the Building to 31 Mount Morris Park West LLC, the Court abstains from jurisdiction on this issue and Plaintiff's claims respecting the sale are DISMISSED.

**CONCLUSION**

For all the foregoing reasons, the above-captioned case is DISMISSED as to all claims.  The Clerk of the Court is directed to close the case.

SO ORDERED:

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:     New York, New York
           February 8, 2010